UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUZANNE PERKINS, | NO.  C16-215-JCC-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Suzanne Perkins appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ").  Administrative Record ("AR") at 21.  For the reasons set forth below, the Court recommends that the Commissioner's final decision be REVERSED  and the case be REMANDED  for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

I.       FACTS AND PROCEDURAL HISTORY

At the alleged onset date of her disability, Plaintiff was forty-three years old.  AR at 105.  She was forty-four on the date last insured.  AR at 31.  She earned an associate degree, a bachelor degree, and a master degree in environmental and public health.  AR at 26.  Her past

REPORT AND RECOMMENDATION - 1

1  work experience includes employment as a research coordinator at Children's Hospital and

2  working in administrative and budgeting roles for the University of Washington.  AR at 65-66.

3  Plaintiff was last gainfully employed in October of 2007.  AR at 28.

4  On December 14, 2012, Plaintiff filed an application for DIB, alleging an onset date of

5  March 1, 2012.  AR at 21.  The time period at issue in this case is March 1, 2012 through

6  December 31, 2012.  AR at 21, 28.  Plaintiff asserts that she is disabled due to multiple

7  sclerosis, psoriasis, obesity, depression, anxiety, back pain from scoliosis, hypothyroidism,

8  chronic cerebrospinal venous insufficiency, and chronic insomnia.  AR at 105.

9  The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 116,

10  131.  Plaintiff requested a hearing which took place on June 4, 2014. AR at 39-103.  On July

11  24, 2014, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on

12  his finding that Plaintiff could perform specific jobs existing in significant numbers in the

13  national economy.  AR at 31-32.  Plaintiff's administrative appeal of the ALJ's decision was

14  denied by the Appeals Council, (AR at 1-7), making the ALJ's ruling the "final decision" of

15  the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On February 12, 2016,

16  Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

17  ## II.   JURISDICTION

18  Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

19  405(g).

20  ## III.   STANDARD OF REVIEW

21  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

22  social security benefits when the ALJ's findings are based on legal error or not supported by

23  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

24  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

REPORT AND RECOMMENDATION - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On July 24, 2014, the ALJ issued a decision finding the following:

1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2.   The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2012 through the date last insured of December 31, 2012.

3.   Through the date last insured, the claimant had the following severe impairments: multiple sclerosis, organic mental disorder, affective disorder, and anxiety disorder.

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   Through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she was able to lift or carry 10 pounds occasionally and frequently; she was able to stand or walk in 15 minute intervals for a total of 2 hours per workday; she was able to sit in 2 hour intervals for a total of 8 hours per workday; she was unable to work at heights; she was unable to climb ladders, ropes or scaffolds; she was able to occasional climb steps or ramps; she was able to occasionally balance,

kneel, crouch, and crawl; she was able to frequently stoop and finger; she should be assigned tasks that require only occasional exposure to extremes of heat & cold, vibrations, high humidity, and wetness; she should be assigned tasks that would not require exposure to hazards; she was able to remember, understand and carry out instruction and tasks generally required by occupations w/ a specific vocational preparation level (SVP) of 1 to 2; and she should be assigned tasks that would only occasionally require a team setting to be completed but can generally be completed without assistance.

6.   Through the date last insured, the claimant was unable to perform any past relevant work.

7.   The claimant was born on XXXXX, 1968 and was 44 years old, which the regulations define as a younger individual age 18-44, on the date last insured.  She subsequently changed age category to a younger individual 45-49.[2]

8.   The claimant has at least a high school education and has able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," during the relevant period at issue in this case, whether or not she has had transferable job skills.

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from March 1, 2012, the alleged onset date, through December 31, 2012, the date last insured.

AR at 23-32.

## VI.   ISSUES ON APPEAL

The issue on appeal is whether the ALJ'S residual functional capacity assessment is supported by substantial evidence and free of legal error when he failed to address the results of the Grooved Pegboard test, Plaintiff's testimony and statements regarding upper extremity

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

1    limitations, and her treating neurologist's opinion regarding her upper extremity limitations.

2    Dkt. No. 9 at 1.

3                                        VII.    DISCUSSION

4           Plaintiff's claimed error raises three distinct issues: whether the ALJ's RFC assessment

5    failed to account for: (1) the results of the Grooved Pegboard test; (2) Plaintiff's testimony

6    about her upper extremity limitations; and (3) the opinion of her treating neurologist, Lily Jung

7    Henson, M.D.   All of these issues are discussed in turn below and relate to the ultimate

8    determination of whether the ALJ's RFC formulation is free of legal error and supported by

9    substantial evidence.

10          At step four, the ALJ must identify Plaintiff's functional limitations or restrictions, and

11   assess her work-related abilities on a function-by-function basis, including a required narrative

12   discussion.  *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.  RFC is the most a claimant can

13   do considering her limitations or restrictions.  *See* SSR 96-8p. The ALJ must consider the

14   limiting effects of all of Plaintiff's impairments, including those that are not severe, in

15   determining her RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p. Additionally, an ALJ

16   must consider a claimant's "ability to work on a sustained basis."  20 C.F.R. §§ 404.1512(a),

17   416.912(a).  An ALJ must assess all the evidence including a claimant's testimony and medical

18   reports to determine what capacity a claimant has for work despite her impairments.  20 C.F.R.

19   §§ 404.1545(a), 416.945(a).

20          A.      The Results of the Grooved Pegboard Test

21          Plaintiff first argues that the ALJ's RFC assessment is not free of legal error because he

22   failed to consider test results showing Plaintiff has impaired fine motor speed and coordination.

23   Dkt. No. 9 at 3-4.   This claim revolves around the November 2012 neuropsychological

24   evaluation performed by Temperance Evans, Psy.D.  *Id.*  Plaintiff contends Dr. Evans found

"her bilateral fine motor speed and coordination were impaired." Dkt. No. 9 at 4 (citing AR at 393). Plaintiff further argues Dr. Evans' opinion is based on the results of the Grooved Pegboard test that she administered which showed "plaintiff has marked difficulties with dexterity." *Id.* at 5. She alleges the ALJ harmfully erred by failing to "mention or explain how he considered the test results describing Plaintiff's fine motor speed and coordination." Dkt. No. 9 at 5. Plaintiff argues the ALJ erroneously omitted these test results and Dr. Evans' opinion of them from Plaintiff's RFC determination thus leading to a finding Plaintiff could perform work that requires finger dexterity and significant use of small tools. Dkt. No. 9 at 5-6.

The Commissioner counters that "even though the ALJ did not specifically mention Dr. Evans' manipulative testing, Dr. Evans did not, in fact, provide a functional assessment of Plaintiff's manipulative restrictions except to say that they were impaired," and suggests that any error the ALJ might have committed is harmless. Dkt. No. 10 at 3-4.

The record shows, and the parties agree, that Dr. Evans examined Plaintiff, administered a number of standardized tests including the Grooved Pegboard test, and opined that Plaintiff was "impaired for fine motor speed and coordination bilaterally (Grooved Pegboard)." AR at 393. The Commissioner concedes the ALJ failed to mention Dr. Evans' manipulative testing. Dkt. No. 10 at 3. The record shows not only that the ALJ failed to address the Grooved Pegboard test, he also failed to discuss or even mention Dr. Evans' opinion that Plaintiff had impaired fine motor speed and bilateral coordination. AR at 30, 393. The ALJ erred in doing so. In determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports and witnesses' descriptions of limitations, to determine a claimant's capacity for work. *See* 20 C.F.R. § 404.1545(a). Because the ALJ's narrative discussion does not include any reference to Dr. Evans' opinions about Plaintiff's

REPORT AND RECOMMENDATION - 8

fine motor and bilateral coordination limitations, the Court finds the ALJ failed to assess all the relevant evidence of Plaintiff's limitations.

The ALJ's failure to address Dr. Evans' opinion that Plaintiff has impaired fine motor speed and coordination bilaterally is not harmless as the Commissioner suggests.   The Commissioner argues that because Dr. Evans' opinion contains no specific limitation, the omission of any limitation is harmless.  The record does not support this argument.

While the ALJ discounted Dr. Evans' opinion regarding Plaintiff's mental impairments (language, spatial ability, etc…) on the grounds Dr. Evans gave "no specific limitations," the ALJ never mentioned Dr. Evans' opinion regarding Plaintiff's fine motor speed and bilateral coordination.  AR. 30.  Nothing in the record shows that the ALJ considered or gave weight to these assessed impairments regarding use of Plaintiff's hands.   It is not for the Commissioner or the Court to weigh medical evidence in the first instance, or to affirm the ALJ based on reasons upon which the ALJ did not rely.  *See Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225 (9th Cir. 1995) (The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *see also Thomas*, 278 F.3d at 954 (a reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner).[3]  The ALJ failed to make requisite factual findings to support his RFC determination, and the Court thus finds it is not free of legal error and cannot be affirmed.  *Smolen,* 80 F.3d at 1279 (A

---

[3] The Court notes that to the extent Dr. Evans's opinion is ambiguous, as the Commissioner claims, the ALJ had an independent duty to either give reasons to reject it, or to develop the record.  *See Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to supplement the record is triggered if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence).

reviewing court must determine whether the decision is "free of legal error" and "supported by substantial evidence.")

The Commissioner also suggests the ALJ's failure to specifically address Dr. Evans' opinion regarding Plaintiff's fine motor speed and bilateral coordination limitations is harmless because the ALJ's RFC determination accounts for the limitations. Specifically, the Commissioner argues Olegario Ignacio, Jr., M.D., a non-examining doctor, opined Plaintiff has "mild limitation in fine manipulation." Dkt. No. 10 at 2. The Commissioner contends the ALJ incorporated this limitation into his RFC determination by limiting Plaintiff to "frequent fingering." *Id.* This argument is flawed because it assumes the limitations found by Dr. Ignacio and by Dr. Evans are the same. Based on this assumption, the Commissioner suggests the ALJ's failure to discuss Dr. Evans' opinions is harmless. The record does not support this kind of assumption. The ALJ never reconciled the opinions of the two doctors regarding Plaintiff's manipulation limitations, and thus the Court cannot uphold the ALJ's decision on the basis that the opinions of these two doctors are the same. *Thomas*, 278 F.3d at 954 (a reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner).

Finally, the Commissioner contends that Plaintiff's focus on the meaning of the Grooved Pegboard test is misplaced. The Commissioner argues Plaintiff's lawyer is in no position to make "a medical assessment of what Dr. Evans' testing means." Dkt. No. 10 at 4. The Commissioner is correct as to the interpretation of the test results. However, this is not a basis upon which the Court may rely to affirm the ALJ's decision regarding Dr. Evans' opinion. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving all other ambiguities. *Andrews*, 53 F.3d at 1039; *cf. Mayes,* 276 F.3d at 459-60. The ALJ failed to fulfill this responsibility in declining to address a medical

REPORT AND RECOMMENDATION - 10

opinion about a limitation that could affect Plaintiff's RFC.  While Plaintiff's argument regarding the implications of the Grooved Pegboard test is misguided, the fact that this argument is off base does not cure the ALJ's failure to sufficiently address Dr. Evans' opinions which flowed from the results of that test.

In sum, the ALJ harmfully erred when he neglected to discuss Dr. Evans' opinion of Plaintiff's hand manipulation limitations.  The ALJ must consider the limiting effects of *all* of Plaintiff's impairments, including those that are not severe, in determining her RFC.  20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-8p  In failing to discuss Dr. Evans' opinion that Plaintiff has hand manipulation limitations, the ALJ's opinion does not demonstrate that he fulfilled his duty to consider all impairments when determining Plaintiff's RFC.   Indeed, the RFC formulation led to a finding at step five that Plaintiff can perform work that requires manual dexterity including the occupations of semiconductor bonder, circuit board touch-up screener, and printer circuit layout taper.  AR at 32.  The Commissioner's arguments that the ALJ's error was harmless are not persuasive.  The Commissioner relies on post hoc rationalizations, misapprehends the ALJ's findings, and erroneously assumes the opinions of Drs. Ignacio and Evans are the same with respect to Plaintiff's limitations.  Accordingly, the ALJ harmfully erred in assessing Dr. Evans' opinion by omitting discussion of the findings regarding Plaintiff's hand manipulation limitations.  On remand, the ALJ should reassess Dr. Evans' opinion and specifically address the manipulation limitations found by the doctor.

B.    Plaintiff's Testimony Regarding Upper Extremity Limitations

Plaintiff next contends the ALJ harmfully erred in evaluating her testimony regarding her manipulation limitations.  Dkt. No. 9 at 7.  Plaintiff testified she had trouble with her "son's zippers, fastening bracelets and necklace," "getting a screwdriver into the small slot on Harrison's toys," and cannot pick up paperclips.  *Id.*

REPORT AND RECOMMENDATION - 11

1    Where, as here, there is no evidence of malingering,[4] an ALJ must provide specific,

2    clear and convincing reasons for rejecting a claimant's testimony. *Molina v. Astrue,* 674 F.3d

3    1104, 1112 (9th Cir. 2012); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). "In

4    weighing a claimant's credibility, the ALJ may consider [her] reputation for truthfulness,

5    inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her]

6    daily activities, [her] work record, and testimony from physicians and third parties concerning

7    the nature, severity, and effect of the symptoms of which [s]he complains." *Light v. Social*

8    *Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

9    The ALJ found Plaintiff's testimony about the intensity, persistence, and limiting

10   effects of her symptoms not entirely credible to the extent her testimony was inconsistent with

11   his RFC determination.  AR at 28.  However, the ALJ also stated "I generally accept her

12   statements about the nature of her problems as well as her limitations.  I agree that her

13   impairments underscore her difficulty with concentration, focus, lifting, standing, walking,

14   sitting, and so forth."  *Id.*

15   Plaintiff argues the ALJ erred by indicating he was generally accepting her statements,

16   but then declining to give "specific reasons to reject her testimony concerning her upper

17   extremity impairments."  Dkt. No. 9 at 8; Dkt. 11 at 5.  The Commissioner argues the ALJ

18   considered Plaintiff's testimony and accounted for her claimed limitations "by limiting

19   Plaintiff to only frequent fingering."  Dkt. No. 10 at 5.   The Commissioner's argument is

20   flawed because the ALJ did not specifically explain whether he was accepting or rejecting

21   Plaintiff's testimony about her hand manipulation limitations, or explain how the RFC

22   accounted for the limitations to which she testified.  "The ALJ must state specifically which

23   symptom testimony is not credible and what facts in the record lead to that conclusion."

24

[4] *See* AR at 28.

1    *Smolen,* 80 F.3d at 1284.  The silence and general lack of clarity in the ALJ's decision amounts

2    to an implicit rejection of Plaintiff's symptom testimony without "specific, clear and

3    convincing reasons."  The record thus does not provide any means for the Court to conclude

4    the ALJ fully accounted for Plaintiff's testimony regarding her hand manipulation limitations

5    in assessing her RFC.

6         Additionally, the ALJ found Plaintiff's testimony was not entirely credible to the extent

7    it was inconsistent with his RFC determination.  AR at 28.  This indicates, as Plaintiff suggests,

8    that the ALJ rejected portions of her testimony, including her claims about her handling

9    limitations.  The ALJ may reject a claimant's testimony.  However, the ALJ must provide clear

10   and convincing reasons for doing so.  In other words, the ALJ must be specific.  *See Moisa v.*

11   *Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be

12   sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's

13   testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony")

14   (internal citations and quotations omitted); *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th

15   Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible

16   and must explain what evidence undermines the testimony"); *see also* SSR 16-3p.  Here, the

17   ALJ did not specifically address Plaintiff's testimony about her handling limitations, did not

18   give specific, clear and convincing reasons to reject it, and did not explain how the limitations

19   contained in the RFC accounted for her testimony.

20        The ALJ's error has not harmless.  As Plaintiff contends, despite her testimony about

21   problems she had with handling small things, the ALJ specifically found that she could

22   perform work that required fine motor skills.  Dkt. No. 13 at 5.  Accordingly, on remand, the

23   ALJ should reassess Plaintiff's testimony and specifically address her claims regarding her

24   hand manipulation limitations.

C.     Treating Neurologist, Lily Jung Henson, M.D.

Dr. Henson was Plaintiff's treating neurologist.  Dr. Henson submitted a statement dated December 27, 2013, in which she opined Ms. Perkins had numerous limitations including motor function difficulty in both hands (AR at 662-65); difficulty with bilateral hand finger movement and muscle control (AR at 664); problems with dressing and using zippers; and changes in fine motor control and sensory changes in her hands with stabbing pain.  AR at 664.  Plaintiff contends the ALJ erred in rejecting Dr. Henson's opinions about her handling limitations.  Dkt. No. 9 at 9.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating physician's opinion may be rejected only for "clear and convincing reasons."  *Id.* at 830-31.  Where contradicted, a treating physician's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31 (*quoting Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings.  *Magallanes*, 881 F.2d at 751.  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Henson's opinion pertains to Plaintiff's limitations with her hands and her mental functioning.  Plaintiff only challenges the ALJ's treatment of this opinion regarding limitations with use of her hands.  *See* Dkt. No. 9 at 9; Dkt. No. 11 at 6.  The Commissioner contends the ALJ properly rejected Dr. Henson's opinion of these limitations.   Dkt. No. 10 at 5.

1    Specifically, the Commissioner argues in support of the ALJ's reasoning concerning the date

2    of Dr. Henson's medical opinion.  In finding that Dr. Henson's opinion was not "particularly

3    relevant," the ALJ stated, "the doctor wrote the opinion in the present tense, which was almost

4    a year after the claimant's last date insured."  AR at 29.[5]  An ALJ may properly consider the

5    remoteness of a medical evaluation in weighing a medical opinion.  *See, e.g., Lombardo v.*

6    *Schweiker,* 749 F.2d 565, 567 (9th Cir. 1984).  Remoteness is most relevant where the medical

7    opinion is based entirely on an examination that is outside the relevant period under

8    consideration.  *Id.* (ALJ properly rejected opinion of doctor who examined claimant over a

9    year after the expiration of the claimant's insured status.)

10         However, the Ninth Circuit has specifically held that "'medical evaluations made after

11   the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration

12   condition."  *Lester*, 81 F.3d at 832 (holding that the ALJ erred in rejecting an examining

13   psychologist's opinion that was completed several months after the claimant's last insured date)

14   (*citing Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *see Taylor v. Comm'r of Soc. Sec.*

15   *Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011) (holding that where a psychiatrist examined the

16   claimant twice and supervised his treatment by a nurse-practitioner during the insured period,

17   that his opinion rendered after the date last insured "related to the period before [the claimant's]

18   disability insurance coverage expired," and thus the psychiatrist's opinion was relevant and

19   must be considered).

20         Accordingly, the ALJ erred in rejecting Dr. Henson's opinions about Plaintiff's

21   handling limitations simply because the opinions were contained in a statement that was

22

23   [5] The ALJ gave additional reasons for rejecting Dr. Henson's opinions about Plaintiff's other
     limitations.  AR at 29-30.  Neither party argues the ALJ relied upon these other reasons to
24   reject the Dr. Henson's opinion about Plaintiff's handling limitations.

prepared after the date last insured.  The ALJ rejected the statement for being written in the "present tense," implying the doctor's opinions reflect Plaintiff's status only as of December 2013, which is outside the date last insured.  Substantial evidence does not support this interpretation.  Dr. Henson's post insured statement shows that the opinions contained therein are based upon a longitudinal view of Plaintiff's condition, symptoms, and brain MRI results during the period of 2006 through 2013.  AR at 662-64.  The statement does not indicate it was written based on an exam performed in December 2013.  Rather, it states "based on a **review** of Suzanne Perkin's clinical findings and related symptoms, it is my opinion . . . ." AR at 665 (emphasis added).  The record thus shows Dr. Henson rendered her opinion based on evidence well within the date last insured.  There is no indication the doctor was giving an opinion about a new impairment causing new handling limitations, or that the limitations flowing from her review of Plaintiff's condition had greatly increased since the date last insured in 2012.  The ALJ thus erred in rejecting Dr. Henson's opinions about Plaintiff's handling limitations.  On remand, the ALJ should reassess Dr. Henson's opinions as to Plaintiff's handling limitations.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be REVERSED and the case be REMANDED to the Commissioner for further proceedings not inconsistent with the Court's findings here.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 13, 2016**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of

REPORT AND RECOMMENDATION - 16

1   objections.  If no timely objections are filed, the matter will be ready for consideration by the

2   District Judge on **September 16, 2016**.

3          This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

4   seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

5   assigned District Judge acts on this Report and Recommendation.

6          DATED this 30th day of August, 2016.

7

8          *James P. Donohue*
           _____

           JAMES P. DONOHUE
9          Chief United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 17